**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**THOMAS HUTCHINSON and TMC STORES, INC.**,

Plaintiffs,

v.

**NUTRO PRODUCTS, INC.**,

Defendant.

Civil No. 00-1929 (MJD/JGL)

**ORDER**

**UNDER SEAL**

---

APPEARANCES

Jerome Abrams, Esq., and Paul Kieffer, Esq., for Plaintiffs.

John Lunseth II, Esq., Nell E. Mathews, Esq., and Patrick D. Robben, Esq., for Defendant.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on December 3, 2001 on Defendant's Motion to Enforce the Settlement Agreement (Doc. No. 40). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. THE SETTLEMENT AGREEMENT

This trademark litigation was commenced to resolve the parties' disagreement over the use of the phrase "Concerned Pet Owners." On April 18,

FILED DEC 06 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.______
DEPUTY CLERK______

2001, a settlement conference between Plaintiffs Thomas Hutchinson ("Hutchinson") and TMC Stores and Defendant Nutro Products, Inc. ("Nutro") was held before this Court, and the parties settled the case. Nutro agreed to pay $95,000.00 to Plaintiffs and to refrain from using the term Concerned Pet Owners. Both parties agreed to keep the terms of the settlement confidential.

The written settlement agreement was executed on or about May 21, 2001. Paragraph 6 of the agreement provides in relevant part:

> This Confidential Settlement Agreement and each and every term hereof, any and all of the litigations referred to hereinabove [sic], and any and all of the disputes or events which gave rise to any of such litigations between and among the parties hereto shall be kept strictly confidential. The parties agree . . . not to make any statements about any of such matters to anyone at any time; provided that, if and only if asked about the Civil Action or any of the subject matter of the Civil Action, the parties may state only the following: The matter has been settled to the mutual satisfaction of the parties. The Court has directed us not to discuss the matter.

Paragraph 6 also declares that if Plaintiffs breach the above clause, they will forfeit the entire $95,000.00. The written agreement further provides for this Court to retain jurisdiction over the agreement and to hear any disputes regarding the parties' compliance with its terms.

## II. PLAINTIFF'S ALLEGED BREACH OF THE AGREEMENT

Nutro contends that Hutchinson violated the settlement agreement by discussing the litigation and settlement with a journalist, Daniel G.

Jennings, in early June 2001. Jennings subsequently wrote an article for the publication Pet Product News in which he quoted Hutchinson. The relevant part of the article, which was published in the August 2001 issue, reads:

> A recent settlement clears the way for store owner Thomas Hutchinson to launch a national retail pet store marketing cooperative. Hutchinson, the owner of Robbinsdale Farm Pet & Garden Supply in Robbinsdale, Minn., and Nutro Products Inc., [a] manufacturer based in City of Industry, Calif., recently settled a lawsuit filed by the retailer last August over his trademark of the phrase "Concerned Pet Owners."
>
> As part of the settlement, Nutro will remove the words Concerned Pet Owners from its packaging, Hutchinson said. Other terms of the settlement were not disclosed.
>
> "It is understood that I'm the sole owner of the trademark," Hutchinson said. Hutchinson registered the Concerned Pet Owners trademark in 1992.

Hutchinson denies making any of the above statements. The article also discusses in detail Hutchinson's plans to use the Concerned Pet Owners trademark as a brand name for a network of pet product retailers; however, Nutro concedes that this communicated information does not violate the confidentiality clause of the settlement agreement. According to Nutro, Hutchinson not only told Jennings the above quoted information but also that the Court had recently ruled in his favor and ordered Nutro to remove the phrase Concerned Pet Owners from its packaging. (Jennings Aff. ¶¶ 2, 3.)

Nutro asks the Court to invoke the forfeiture clause and require Hutchinson to forfeit $50,000.00.[1]

The parties do not disagree that if Hutchinson told Jennings the information at issue, Hutchinson breached the confidentiality provision of the settlement agreement. Hutchinson denies ever talking to Jennings, but says that a female reporter from Pet Product News named Lee, Lea, or Leigh contacted him in early June 2001.

## III. DISCUSSION

It is clear to the Court that Hutchinson breached the settlement agreement by disclosing confidential information to Jennings and that Hutchinson is the source of the confidential information contained in the article. In Jennings' deposition, he said that Hutchinson told him in a phone conversation in early June that the lawsuit had been settled, that Nutro would no longer use the phrase concerned Pet Owners, and that the Court had recently ruled in his favor. (Jennings Dep. at 12-14.) Hutchinson's statements to Jennings were the basis for the information included in the article. (Id. at 15-19.) This testimony is consistent with Jennings explicitly attributing the offending statement to Hutchinson in the text of article.

---

[1] In its motion papers, Nutro asked that Hutchinson be required to forfeit the entire $95,000.00. However, at the motion hearing, Nutro modified the requested amount to $50,000.00 so that a sum would remain as an incentive against future breaches.

Jennings further testified that he wrote the article after speaking with Hutchinson on June 6, 2001, (Jennings Dep. at 15, 31), not before, as Hutchinson argues. Hutchinson bases this argument on a possible discrepancy in Jennings' deposition testimony with respect to the timing of a phone call to Hutchinson at 1:14 p.m. and the timing of Jennings' email to Brian Hutchins, an editor of Pet Product News, at 12:51 p.m. (Jennings Dep. Ex. 1; Kieffer Aff. Ex. D.) The email, which apparently preceded the phone call by twenty-three minutes, contained information Jennings said he got from Hutchinson in the phone call. There are at least two credible explanations for the discrepancy. First, Jennings acknowledged the incongruity and explained that he may have previously talked to Hutchinson, presumably during a phone call not initiated by Jennings and therefore not appearing on his phone records, prior to sending the email. The Court finds this explanation credible.

Second, a scrupulous inspection of the email record reveals that the time stamps on the emails between Jennings and Hutchins are unreliable. During the relevant time period, Jennings was in Colorado, which is in the Mountain time zone, and Hutchins was in California, which is in the Pacific time zone. Jennings' email could not have been written at 12:51 p.m. Mountain time because Hutchins' reply was time stamped 1:37 p.m., which, when accounting for the one hour time zone difference, would have actually predated Jennings' original email. The Court is aware that time stamps on

emails are not always accurate and may even be changed when routed through a server or a computer with a wrong or different time setting.

Regarding the minor discrepancies between Jennings' affidavit and deposition, the inconsistencies do not impact Jennings' credibility. The variances are not out of the ordinary, especially when time passes between an event and the telling of it, and Jennings adequately explained the discrepancies. In sum, the Court finds Jennings' testimony credible.

Moreover, Hutchinson offers no reasonable alternative as to how Jennings could have discovered the disclosed, confidential terms of the settlement. Hutchinson had previously asserted without substantiation that Nutro must have leaked the information, but he has evidently abandoned this argument. In any event, after considering the quote attributed to Nutro in the article, the Court finds the accusation without merit. John Lunseth, Nutro's attorney, was quoted as saying only, "The case was settled to the satisfaction of both parties." This statement conforms precisely to what the settlement agreement allowed.

After receiving testimony from Hutchinson at the motion hearing, the Court is further convinced of Jennings' credibility and finds Hutchinson's conflicting testimony not credible. The statements attributed to Hutchinson in the article are both consistent with his previous communications with the media and self-serving. Hutchinson had a large financial disincentive to testify

truthfully. Some of Hutchinson's testimony is irreconcilable with other evidence in the record and with simple logic. For example, after reviewing the issue of Pet Product News submitted to the Court, the Court found no reporter named Lee or any derivation of that name on the masthead or in the bylines. Also, Hutchinson offered no alternative source of the information attributed to him. Finally, Hutchinson has concealed information potentially detrimental to him in the past. During discovery, Hutchinson failed to produce a document dated August 31, 2000, entitled "The Store for 'Concerned Pet Owners' needs your help." (Def. Hr'g Ex. 10.) After Hutchinson denied having the document, Nutro's attorney entered Hutchinson's store, saw copies of the document lying on the counter, and took one.

The Court is also compelled to observe that Hutchinson's opposition to this motion is replete with misstated evidence and faulty reasoning. For example, Hutchinson contends that the published article did not contain the information attributed to him by Jennings because "Pet Product News saw no merit in reporting what Jennings states Mr. Hutchinson told him" and the publication "obviously had concerns about the accuracy of Jennings' story." (Pl. Mem. Opp. Mot. Enf. Settle. Agr. at 6, 7.) These inflammatory remarks are completely unsupported by any facts. Likewise, Hutchinson's statement that the terms of the settlement were disclosed in an article published in September 2000, (Id. at 7), is incorrect in three respects.

First, the article clearly does not discuss the terms of the settlement. (Kieffer Aff. of Sept. 13, 2001, Ex. D.) Second, the article was published in October 2000, not September 2000. (Id.) Third, since the article was published in October 2000, it obviously could not have included settlement terms which were not agreed to until April 2001. Yet another example is Hutchinson's complaint that Nutro is attempting to place him "in the position of proving a negative," stating that "this Court knows [] it is logically impossible to prove a negative." To the contrary, parties often must prove they did not do an act. Particularly well-accepted and effective methods of "proving a negative" include alibis in criminal cases and truth in defamation cases.

In conclusion, the only people who could have disclosed the confidential information were Hutchinson, a representative of Nutro, or an attorney in this case. After reviewing all the evidence, the Court finds that it was Hutchinson who breached the settlement agreement.

The remaining issue is the amount of damages to award Nutro for the breach. The agreement provides for forfeiture of the entire $95,000.00. Nutro requests $50,000.00, and Hutchinson proposes $5000.00. The Court finds that Nutro is entitled to $5000.00. The parties agree that $5000.00 of the settlement amount was consideration for Plaintiffs' agreement to the confidentiality provision. (Lunseth Aff. ¶ 2; Pl. Mem. Opp. Mot. Enf. Settle. Agr. at 8.)

Settlement agreements are governed by contract law. See Sheng v. Starkey Lab., Inc., 53 F.3d 192, 194 (8th Cir. 1995) (citations omitted); Jallen v. Agre, 119 N.W.2d 739, 743 (Minn. 1963). A liquidated damages clause is valid as long as it represents fair compensation for a breach and is not a penalty. See Gorco Constr. Co. v. Stein, 99 N.W.2d 69, 74 (Minn. 1959). The determining factor "is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances." Id. (citations omitted). In this case, the Court finds that the amount of $95,000.00 is unreasonable in light of the contract as a whole, the nature of the damage, and the circumstances of the settlement. The parties agree that Hutchinson's confidentiality was valucd at $5000.00, and the Court accordingly finds that the amount owed by Hutchinson to Nutro for breaching the confidentiality provision is $5000.00. Lastly, Hutchinson is warned that another breach will result in an additional forfeiture.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Nutro's Motion to Enforce Settlement

Agreement (Doc. No. 40) is **GRANTED**. Plaintiff Hutchinson is ordered to pay Nutro $5000.00 within thirty days of the date of this Order. Payment shall be effective upon delivery to counsel for Nutro.

Dated: December______, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge